**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-03033-NYW-KLM

JAMES BOWLING, individually and on behalf of all others similarly situated,

     Plaintiff,

v.

DAVITA, INC.,

     Defendant.

---

## ORDER ON MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION

---

This matter is before the Court on Plaintiff's Opposed Motion for FLSA Conditional Certification and Court-Authorized Notice (the "Motion" or "Motion for Conditional Certification") [Doc. 73]. The Court has reviewed the Motion, the related briefing, the applicable case law, and the entire docket, and concludes that oral argument would not materially assist in the resolution of the matters herein. Accordingly, for the reasons set forth in this Order, the Motion for Conditional Certification is **GRANTED in part** and **DENIED in part**.

### BACKGROUND

Plaintiff James Bowling ("Plaintiff" or "Mr. Bowling") initiated this collective action on November 10, 2021 pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, [Doc. 1], and filed his Amended Complaint on February 14, 2022. [Doc. 31]. Plaintiff alleges generally that Defendant DaVita, Inc. ("Defendant" or "DaVita") has failed to provide bona fide meal breaks to its employees and has failed to adequately compensate its employees for time worked during their meal breaks. [*Id.* at ¶ 1]. According to Mr. Bowling, DaVita nurses and

technicians regularly work six-hour shifts, which entitle them to a 30-minute unpaid, uninterrupted meal break. [*Id.* at ¶¶ 21–22]. Employees—either automatically through the company's time-management software or manually—clock out for those 30-minute meal breaks. [*Id.* at ¶ 22]. Each pay period, to account for those unpaid meal breaks, DaVita deducts 30 minutes from each six-hour shift worked before time records are processed through payroll. [*Id.*]. However, Plaintiff claims that DaVita requires and expects its nurses and technicians to work during their unpaid meal breaks, and that nurses and technicians regularly work during their unpaid meal breaks. [*Id.* at ¶¶ 25–29]. Mr. Bowling alleges that these practices have deprived nurses and technicians of overtime compensation they are legally entitled to for weeks in which they worked over 40 hours. [*Id.* at ¶¶ 3, 10]. Accordingly, Plaintiff claims that DaVita violated the FLSA by failing to properly compensate employees for overtime hours worked. [*Id.* at ¶ 4]. Mr. Bowling asserts a single claim, alleging a violation of 29 U.S.C. § 207 for failure to pay proper overtime wages, on behalf of current and former DaVita nurses and technicians who, at any time during the three years before the filing of his lawsuit, did not receive the overtime pay they were entitled to under the FLSA due to DaVita's practice of deducting 30 minutes from each six-hour shift worked. [*Id.* at ¶¶ 5, 31–39].

On April 15, 2022, the Honorable Kristen L. Mix entered a Scheduling Order, which contemplates three phases of discovery. [Doc. 42 at 7]. In the first phase, the Parties "focus[ed] on the Named Plaintiff[] and opt-in plaintiffs and the discovery necessary for conditional certification of the FLSA collective action." [*Id.*]. The first phase of discovery closed on September 22, 2022. [*Id.* at 8; Doc. 48].

If the Court grants conditional certification, the case will proceed to the second phase, which will "focus on (1) the claims of those individuals who file consents to join the action under

29 U.S.C. § 216(b), and (2) whether de-certification is warranted." [*Id.* at 7]. And if, after the second phase, any conditionally certified collective action is not decertified, the Parties will proceed to the third and final discovery phase, which will "focus on the merits of the claims, and the Plaintiff['s] and collective members' damages." [*Id.*].

Plaintiff filed the instant Motion on October 28, 2022. [Doc. 73]. He seeks a Court order (1) conditionally certifying the proposed collective;[1] (2) ordering DaVita to produce to his counsel a list of potential opt-in plaintiffs; (3) approving notice to potential opt-in plaintiffs; (4) permitting a 90-day notice period; and (5) authorizing his counsel or a third-party administrator to issue notice to the collective. [*Id.* at 1]. Defendant opposes the Motion, arguing that Plaintiff has failed to meet his burden of demonstrating that all of the nurses and technicians he seeks to act on behalf of are similarly situated and subject to a companywide policy or practice. *See* [Doc. 78]. Plaintiff has since filed a Reply, [Doc. 83], and Defendant filed a Surreply with leave of Court. [Doc. 87].[2]

## LEGAL STANDARD

The FLSA sets out required standards governing the payment of minimum and overtime wages to employees. 29 U.S.C. §§ 206, 207. Section 216(b) of the FLSA permits private individuals to challenge minimum wage and overtime pay violations by bringing claims on "behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). This sort of collective action allows "plaintiffs the advantage of lower individual costs to vindicate rights by

---

[1] While Plaintiff and many courts use the term "class," this Court utilizes the terms "collective" or "potential opt-in plaintiffs" in recognition that this action proceeds under the FLSA and is different from a class action that proceeds under Rule 23 of the Federal Rules of Civil Procedure. *See Oldershaw v. DaVita Healthcare Partners, Inc.*, 255 F. Supp. 3d 1110, 1113–14 (D. Colo. 2017).

[2] In its Surreply, Defendant contends that Plaintiff improperly relies on new evidence in his Reply. *See* [Doc. 87 at 1]; *see also* [Doc. 83 at 2 n.1 (Plaintiff referencing new evidence in support of his Motion for Conditional Certification)]. Defendant's argument is well-taken, and the Court does not consider this new evidence in ruling on the Motion for Conditional Certification.

the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (interpreting the Age Discrimination in Employment Act, which explicitly incorporates the collective action provisions of the FLSA).

FLSA collective actions may be maintained "only by and among employees who are 'similarly situated.'" *Norwood v. WBS, Inc.*, No. 15-cv-00622-MSK-KMT, 2016 WL 7666525, at *1 (D. Colo. Sept. 29, 2016). "The trial court is tasked with determining who is 'similarly situated' for purposes of a § 216(b) claim in a 'manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure.'" *Pena v. Home Care of Denver, LLC*, No. 19-cv-00069-CMA-NYW, 2019 WL 5577947, at *1 (D. Colo. Oct. 29, 2019) (quoting *Hoffmann-La Roche*, 493 U.S. at 170–72).

The Tenth Circuit has authorized a two-step process, known as the *ad hoc* approach, for determining whether putative collective action members are similarly situated. *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). At the initial "notice stage" of the litigation, to assess whether the putative plaintiffs are similarly situated, the trial court determines whether the plaintiff has asserted "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). "Certification at this step is conditional, and the standard of proof 'is a lenient one that typically results in . . . certification,' allowing notice to be sent to the putative class members and discovery to be undertaken." *Norwood*, 2016 WL 7666525, at *1 (quoting *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004)).[3]

---

[3] In *Turner v. Chipotle Mexican Grill, Inc.*, 123 F. Supp. 3d 1300 (D. Colo. 2015), the court considered as a threshold issue the "proper procedural mechanism for pursuing a representative action 'on behalf of' employees similarly situated." *Id.* at 1305. Based on its reading of the FLSA and historical jurisprudence, the *Turner* court rejected the two-stage process in favor of allowing "workers [who] bring[] the same statutory claim against the same employer to join as a collective, with the understanding that individuals may be challenged and severed from the collective if the

Courts generally "limit[] the scope of their review on a motion for conditional certification to the allegations in plaintiffs' complaint and supporting affidavits." *Shockey v. Huhtamaki, Inc.*, 730 F. Supp. 2d 1298, 1303 (D. Kan. 2010); *see also MacDonald v. Covenant Testing Techs., LLC*, No. 18-cv-02290-NRN, 2019 WL 1755282, at *3 (D. Colo. Apr. 18, 2019). Courts can, however, also consider other evidence obtained through early discovery. *See Thiessen*, 267 F.3d at 1108; *James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892, 912 (D. Kan. 2021) (considering deposition testimony and interrogatory answers at conditional-certification step); *Gomez v. Epic Landscape Prods., L.C.*, No. 2:22-cv-02198-JAR-ADM, 2023 WL 3159604, at *3 (D. Kan. Apr. 28, 2023) ("[T]he Court considers the allegations in Plaintiffs' Amended Complaint and the instant motion, as well as the documentation attached thereto, to determine if there are substantial allegations that the putative class members were together the victims of a single decision, policy, or plan to not pay overtime premiums."). Critically, the Court does not weigh evidence, resolve factual disputes, or reach the merits of the pending claims at the conditional-certification stage. *MacDonald*, 2019 WL 1755282, at *3.

"After discovery is complete, the second, or 'decertification,' stage occurs." *Norwood*, 2016 WL 7666525, at *1. At the second stage, the trial court applies a stricter standard to determine whether the action should continue as a collective action. In particular, the trial court must evaluate the "disparate factual and employment settings of the individual plaintiffs; the

---

basis for their joinder proves erroneous." *Id.* at 1309. In denying mandamus in *Turner*, the Tenth Circuit observed that although it had opined in *Thiessen* that the *ad hoc* approach was "arguably the best" of the three approaches examined therein, there was "little difference in the various approaches," because each one allows "for consideration of the same or similar factors, and generally provide[s] a district court with discretion to deny certification for trial management reasons." *In re Chipotle Mexican Grill, Inc.*, No. 17-1028, 2017 WL 4054144, at *2 (10th Cir. Mar. 27, 2017) (quoting *Thiessen*, 267 F.3d at 1105). The Parties here do not seek the application of the *Turner* (or any other) standard, and thus, this Court proceeds to apply *Thiessen*.

various defenses available to defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether plaintiffs made any required filings before instituting suit." *Brown*, 222 F.R.D. at 679 (citing *Thiessen*, 267 F.3d at 1103).

## ANALYSIS

### I.     Conditional Collective Certification

Mr. Bowling asks the Court to conditionally certify the following collective "for the three years prior to the filing of this lawsuit and forward:"

> All current and former hourly-paid nurses and technicians employed at any DaVita location to provide direct patient care who did not receive fully relieved meal breaks who may be owed overtime pay under the FLSA for workweeks in which they worked more than forty (40) hours per week including any deducted meal breaks.[4]

[Doc. 73 at 18–19 (the "Proposed Collective")].[5]  He contends that these employees are similarly situated because they were "subjected . . . to an identical policy and practice with respect to meal . . . breaks"—i.e., a policy requiring employees to clock out but remain available to work during meal breaks, resulting in inadequate overtime pay—"which was implemented identically (and illegally) at all locations."  [*Id.* at 3, 10].

---

[4] While the Court notes that this Proposed Collective definition is worded slightly differently than the definition contained in the Amended Complaint, *compare* [Doc. 31 at ¶ 5], the changes appear to be only stylistic, rather than substantive; furthermore, the Court notes that Defendant does not raise any argument challenging the inconsistent collective definitions.  *See generally* [Doc. 78].

[5] Plaintiff also requests that the Court certify an "FLSA Rest Break Collective," *see* [Doc. 73 at 19], arguing that Defendant also failed to pay nurses and technicians for compensable short rest breaks.  [*Id.* at 16–17].  On October 4, 2022, Plaintiff filed an Opposed Motion for Leave to Amend Complaint (the "Motion to Amend"), wherein he sought leave to amend his Amended Complaint to add FLSA claims based on alleged uncompensated rest breaks.  *See generally* [Doc. 60; Doc. 60-1].  On April 10, 2023—after briefing on the instant Motion for Conditional Certification was complete—Judge Mix recommended that the Motion to Amend be denied.  [Doc. 89].  This Court adopted the Recommendation and denied the Motion to Amend on April 28, 2023.  [Doc. 90].  Because there are no claims in this case based on any alleged failure to compensate employees for rest breaks, the Court need not address the Parties' arguments related to any claims based on rest-break violations.

DaVita offers several arguments in opposition to conditional certification. First, it contends that "before even considering" Plaintiff's allegations or evidence, "the Court should take into account compelling recent certification decisions in this District examining DaVita's policies and practices." [Doc. 78 at 8]. Specifically, DaVita directs the Court to *Oldershaw v. DaVita HealthCare Partners, Inc.*, No. 15-cv-01964-MSK-NYW, 2019 WL 427650 (D. Colo. Feb. 4, 2019), and *Harris v. DaVita Healthcare Partners, Inc.*, No. 17-cv-02741-MSK-NYW, 2019 WL 422318 (D. Colo. Feb. 4, 2019). DaVita contends that these cases are dispositive of the pending Motion because the court, in both decisions, determined that the evidence showed that DaVita's policymaking occurred at the facility level, such that the plaintiff had not established that there was a companywide policy or practice that applied to all putative plaintiffs. [Doc. 78 at 8–9].

Neither of these cases necessitates denial of the Motion for Conditional Certification. The *Oldershaw* decision was made at the *decertification* stage and involved allegations that DaVita allocated a certain number of hours per shift in which employees were expected to complete their work, and because the plaintiffs could not complete their work within the allocated time, they were required to perform uncompensated, off-the-clock work. *Oldershaw*, 2019 WL 427650, at \*5. The court concluded, based on a review of the evidentiary record after completion of discovery, that the plaintiffs had not come forward with significant evidence demonstrating that they were subject to a *companywide*, as opposed to facility-specific, policy or practice. *Id.* at \*9. In *Harris*, the plaintiffs raised allegations that were essentially identical to those raised by the *Oldershaw* plaintiffs. *Harris*, 2019 WL 422318, at \*2. The court invoked its *Oldershaw* holding—though acknowledging that *Oldershaw* involved a stricter standard and a different evidentiary record, *see id.* at \*3—in concluding that the plaintiffs "ha[d] not come forward with substantial evidence that

place[d] the locus of decisionmaking for their unpaid overtime anywhere above the level of their individual facility administrators." *Id.* at *4.

Critically, DaVita has directed the Court to no legal authority suggesting that it would be appropriate for the Court to consider another judge's decisions, based on a different set of facts, a different set of allegations, and a different evidentiary record, in determining whether Plaintiff in this case has put forth substantial allegations that the Proposed Collective members are subject to a single policy or practice. *See generally* [Doc. 78]. The Court is respectfully unpersuaded that these cases—decided four years ago, based on different circumstances, facts, and evidence than those present here—necessitate a premature factual conclusion that there is no single, companywide policy that applies to all of the potential opt-in plaintiffs. *Cf., e.g.*, *United States v. Rhodes*, 834 F. App'x 457, 462 (10th Cir. 2020) ("[D]istrict courts in this circuit are bound by [Tenth Circuit] decisions and those of the United States Supreme Court—they are not bound by decisions of other district courts."). The Court thus concludes that the above authorities do not justify the denial of the Motion for Conditional Certification.

On that same note, the Court declines to consider DaVita's argument that, based on its submitted evidence (which amounts to over 400 pages of material), "[facility managers] at the facility level are responsible for overseeing meal breaks, work allocation, and time recording practices," such that there is no single decision, policy, or plan to which all potential opt-in plaintiffs are subject. [Doc. 78 at 9–10 (emphasis omitted)]; *see also* [Doc. 78-1; Doc. 78-2; Doc. 78-3]. In essence, DaVita is asking the Court to collapse the first and second steps of the *Thiessen* approach, which the Court cannot do. *See Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1167 (D. Kan. 2006); *Renfro v. Spartan Comput. Servs., Inc.*, 243 F.R.D. 431, 434 (D. Kan. 2007) (declining to address "premature" arguments at the initial certification stage).

Indeed, the Court does not resolve factual disputes at the notice stage, and factual disputes do not preclude conditional certification. *See Wass v. NPC Int'l, Inc.*, No. 09-2254-JWL, 2011 WL 1118774, at *5 (D. Kan. Mar. 28, 2011) (concluding that contrary evidence submitted by the defendant was "irrelevant" at the conditional stage); *Levine v. Vitamin Cottage Nat. Food Mkts. Inc.*, No. 20-cv-00261-STV, 2020 WL 6546734, at *4 (D. Colo. Nov. 6, 2020) (declining to consider, at the conditional stage, evidence that the defendant argued showed that there was no uniform policy or practice); *Barnwell v. Corr. Corp. of Am.*, No. 08-2151-JWL, 2008 WL 5157476, at *5 (D. Kan. Dec. 9, 2008) ("[T]he fact that evidence exists negating plaintiffs' claims does not warrant the denial of conditional certification where plaintiffs nonetheless have presented substantial allegations supporting the existence of a policy.").

Similarly, many of Defendant's arguments in opposition to conditional certification attack the merits of Plaintiff's FLSA claim. *See, e.g.*, [Doc. 78 at 11 ("[Mr.] Bowling does not cite any authority supporting the novel theory he invents in his Motion that being 'subject to interruption' (but not actually interrupted) is compensable work time."); *id.* at 14 ("[M]any declarants testified that such interruptions either never happened or were incredibly rare, demonstrating the clear absence of a common practice or experience of frequently interrupted meal breaks."); *id.* at 15 n.9 ("[T]he practice of a supervisor deducting a lunch break does not violate the FLSA.")]. "[A]t this stage, the Court must determine only whether the [employees] are similarly situated, not whether Plaintiff['s] FLSA claim has merit." *Darrow v. WKRP Mgmt., LLC*, No. 09-cv-01613-CMA-BNB, 2012 WL 638119, at *4 (D. Colo. Feb. 28, 2012); *see also Levine*, 2020 WL 6546734, at *4 (concluding that an argument that the evidence showed that some employees were not subject to the challenged policy was "not appropriate at the conditional certification stage"). The Court cannot, and does not, reach the merits of Plaintiff's claim at this stage of the proceedings and

declines to address any arguments challenging Plaintiff's claim on the merits. "To the extent defendant has identified possible defenses or justifications for decertification, such arguments will be more fully considered should defendant decide to file a motion for summary judgment or motion for decertification." *Shockey*, 730 F. Supp. 2d at 1306.

In sum, the Court's analysis is limited to whether Mr. Bowling has met his burden at the initial stage—that is, whether he has made substantial allegations that the Proposed Collective members were subject to a single decision, policy, or plan. *Thiessen*, 267 F.3d at 1102.

In his Amended Complaint, Mr. Bowling alleges that all Proposed Collective members formerly worked or still work as hourly paid nurses and technicians at DaVita. [Doc. 31 at ¶ 1]. He alleges that all Proposed Collective members "remain responsible for patient care" and are expected to perform work tasks during their unpaid meal breaks. [*Id.* at ¶¶ 1, 2, 26]. It follows, according to Plaintiff, that nurses and technicians were deprived of bona fide, uninterrupted meal breaks. [*Id.* at ¶ 2]. Furthermore, Plaintiff alleges that DaVita has a policy of automatically deducting 30 minutes—to account for unpaid meal breaks—from all completed shifts greater than six hours. [*Id.* at ¶¶ 22–23]. Plaintiff asserts that, as a result of DaVita's common companywide policy "equally applicable to him and to every" potential opt-in plaintiff, the Proposed Collective members were deprived of pay for legally compensable time and were deprived of appropriate overtime pay, in violation of the FLSA. [*Id.* at ¶¶ 21, 33]. He reiterates in his Motion that the Proposed Collective members were "all subject to the same meal . . . break policies, which were implemented identically at all of DaVita's locations." [Doc. 73 at 7].

In support of his allegations, Mr. Bowling has submitted DaVita's workplace policy governing meal breaks. The 2021 version of the policy states:

> Nonexempt teammates should not perform work during rest breaks or meal periods, and they should enjoy these rest breaks and meal periods away from work areas.

When rest breaks or meal periods are over, teammates should resume their duties promptly.

Supervisors will make every effort to ensure that non-exempt teammates are provided with regular meal periods during which teammates are relieved of all work, except as otherwise provided by law.  If these teammates work six or more hours during a shift, they will be provided with one 30-minute off-duty unpaid meal period before the end of the fifth hour of work. . . .  *However, if it is necessary for a non-exempt teammate to work during a meal period, or if he or she is not relieved of all work during a meal period, then the meal period is considered time worked, and the teammate must remain punched into the time clock and will be compensated accordingly.*

[Doc. 73-8 at 12–13 (emphasis added)].[6]  Earlier versions of the policy contained substantially the same provisions, though the 2018 version did not require employees to remain punched in during interrupted meal breaks, providing instead that "if it is necessary for non-exempt teammates to work during a meal period, or if they are not relieved of all work during a meal period, then the meal period is considered time worked, and they will be compensated accordingly."  [*Id.* at 2]. DaVita's Rule 30(b)(6) representative, Shawn Zuckerman, confirmed at his deposition that in states where there is no state-specific meal-break policy, this policy applies.  [Doc. 73-7 at 77:11–21].  Mr. Bowling argues in his Motion that although the policy states that employees will be compensated for work performed during meal breaks, DaVita's expectation that employees clock out for, but remain available during, meal breaks, plus DaVita's policy of automatically deducting 30 minutes per six-hour shift, even if an employee worked during their meal break, contravenes this policy.  [Doc. 73 at 10–12].

In addition, Mr. Bowling relies on the deposition testimony of DaVita employees Jacqueline Barbee, Nahkema Clay, Selena Grant, Kenya Hooppell, Jennifer Stirl, and Laura

---

[6] Plaintiff has submitted four versions of DaVita's meal-break policy, governing the years 2018, 2019, 2020, and 2021.  *See generally* [Doc. 73-8]; *see also* [Doc. 73 at 4 n.5].  Defendant does not challenge the authenticity or accuracy of the policy.  *See generally* [Doc. 78].

Stewart (collectively, the "Opt-In Plaintiffs").  The Opt-In Plaintiffs worked for DaVita in the following states: Arkansas (Ms. Stirl); Florida (Ms. Hooppell); Georgia (Ms. Grant); Louisiana (Ms. Stirl); Oklahoma (Ms. Stirl); New York (Ms. Clay); Tennessee (Ms. Barbee and Ms. Stewart); Texas (Ms. Stirl, as well as Plaintiff); and Virginia (Ms. Grant).  *See* [Doc. 73 at 3].[7]  Mr. Bowling argues that nurses and technicians have a duty to essentially remain on-call at all times, even during their unpaid meal breaks, [*id.* at 14], relying on his and the Opt-In Plaintiffs' deposition testimony; broadly speaking, each testified that they were sometimes required to perform work tasks during what should have been uninterrupted meal breaks.  *See* [*id.* at 14 n.25]; *see also* [Doc. 73-1 at 101:1–9 (Mr. Bowling); Doc. 73-2 at 77:12–78:23 (Ms. Barbee); Doc. 73-3 at 92:17–93:4 (Ms. Clay testifying that employees "were frequently interrupted"); Doc. 73-4 at 107:10–108:4 (Ms. Grant); Doc. 73-5 at 92:12–94:15 (Ms. Hooppell); Doc. 73-6 at 72:20–25 (Ms. Stirl); Doc. 73-15 at 86:3–9 (Ms. Stewart)].  For five of these employees, Mr. Bowling has submitted what appear to be timesheet records, which Plaintiff suggests reflect impermissible meal break deductions, as well as uncompensated and owing overtime pay.  *See* [Doc. 73-9 at 2, 4, 6, 8, 10]; *see also* [Doc. 73 at 7 n.16 (Plaintiff arguing that these records are "examples of Plaintiff and the Opt-in Plaintiffs working over forty hours in a workweek with impermissible meal . . . break deductions")].[8]

Mr. Bowling also points to other deposition testimony from Mr. Zuckerman, who suggested that employees are expected to respond to medical emergencies during meal breaks if necessary:

---

[7] It is unclear from the record whether the Opt-In Plaintiffs are currently employed by DaVita.

[8] These records appear to include notations, which the Court presumes were added by Plaintiff and/or Plaintiff's counsel.  *See* [Doc. 73-9 at 2, 4, 6, 8, 10].  Defendant does not raise any challenge to Plaintiff's use of these notated records.  *See generally* [Doc. 78].  The Court does not pass on the substance or weight of this evidence.

Q.   So what's expected of -- [a nurse] while having a sandwich if she comes across a patient life-threatening complication?   Should she finish her sandwich and address it after her 30 minutes?

. . .

A.   I would say, in my opinion, our expectation of our teammates would be to -- just like if another teammate had an emergency, I wouldn't expect this teammate having a sandwich to ignore that teammate who's having a medical emergency, and I wouldn't expect that teammate to ignore a patient who is having a medical emergency.

[Doc. 73-7 at 113:12–25].  Mr. Bowling stresses in his Motion that all nurses and technicians owe an ethical duty to their patients, such that whether or not an employee is on an unpaid meal break, they are still responsible for the care provided to their patients and are expected to respond to emergency situations.  [Doc. 73 at 15].  Indeed, DaVita's meal break policy expressly contemplates a scenario in which an employee must work during a meal break, *see* [Doc. 73-8 at 12–13], and Mr. Zuckerman confirmed the possibility of medical emergencies requiring an employee to work through his or her meal break.  [Doc. 73-7 at 113:12–25].

Based on this evidence, coupled with the allegations in the Amended Complaint, the Court concludes that Mr. Bowling has raised substantial allegations that the Opt-In Plaintiffs were subject to the same decision, policy, or plan and has met the lenient conditional-certification standard, with important limitations discussed below.  He has submitted evidence, from both DaVita's representative and seven DaVita employees working across nine different states, demonstrating that, in certain situations, employees are expected to work during their unpaid meal breaks.  He also has submitted the timesheet records of five employees, which he asserts reflect uncompensated overtime pay due to improperly deducted meal-break periods.  The Court finds this a sufficient showing, at the notice stage, to permit limited conditional certification.  *See Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1133 (D. Colo. 2011) (finding

that allegations in the complaint, plus two employee declarations, were sufficient "under the lenient standard of the notice step to warrant . . . conditional certification"); *cf. Brown v. EOG Res., Inc.*, No. 22-cv-0116 KG/GBW, 2023 WL 2499602, at *4 (D.N.M. Mar. 14, 2023) (rejecting the defendant's argument that the plaintiffs' evidence was "nothing more than personal statements of belief without sufficient factual support" and finding that this argument was better suited for the second stage of the certification process). To the extent that Defendant has identified deficiencies in Plaintiff's legal theories or evidence, it may raise any such challenges at a later stage in the proceedings, at which time Plaintiff will be expected to make a stronger showing. *Shockey*, 730 F. Supp. 2d at 1306.

With that said, the Court concludes that conditional certification must be limited to the nine states in which the DaVita facilities specifically identified in Plaintiff's Motion and supporting evidence are located. While the Court finds generally that DaVita's arguments challenging the scope of the Proposed Collective improperly ask the Court to weigh evidence in this case, *see* [Doc. 78 at 10], the Court nevertheless agrees with DaVita's underlying conclusion that Plaintiff has not met his burden of demonstrating that conditional certification of a *nationwide* class is appropriate. Typically, "alleged FLSA violations at one of a company's multiple locations are insufficient, without more, for company-wide notice." *Landry v. Swire Oilfield Servs., L.L.C.*, 252 F. Supp. 3d 1079, 1125 (D.N.M. 2017). Plaintiff's and Opt-In Plaintiffs' knowledge is limited to their personal observations and experiences working for DaVita in nine specific states: Arkansas; Florida; Georgia; Louisiana; Oklahoma; New York; Tennessee; Texas; and Virginia. [Doc. 73 at 3]. Mr. Bowling makes no factual allegations, beyond conclusory assertions, that would permit the Court to conclude that he has personal knowledge of the experiences of DaVita employees working in any other state. Nor has Plaintiff directed the Court to any specific evidence plausibly

evincing a company-wide policy or practice across *all* DaVita locations.  *Compare Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 434 (D.N.M. 2018) (certifying company-wide class where the plaintiff submitted declarations from employees in five different states in which the employees attested that they had personal knowledge of uniform, nationwide practices).

While the Court acknowledges that the Parties have engaged in only limited discovery and there is an asymmetry of information between the Parties with respect to their knowledge of DaVita's policies and practices, the Court emphasizes that it is Mr. Bowling's burden to come forward with *substantial* allegations of a uniform policy or practice.  *Thiessen*, 267 F.3d at 1102. "The term 'substantial' must carry some weight or it is rendered meaningless." *Pegues v. CareCentrix, Inc.*, No. 12-2484-CM, 2013 WL 1896994, at *3 (D. Kan. May 6, 2013).  Without *any* evidence or allegations based on personal knowledge demonstrating the practices or policies employed by DaVita in other states, Mr. Bowling has not shown that conditional certification of a nationwide collective is appropriate.  *See Peer v. Grayco Mgmt. LLC*, No. 3:16-cv-01578, 2017 WL 2403269, at *4 (M.D. Tenn. June 2, 2017) (declining to conditionally certify a city-wide collective where the plaintiff's allegations concerned only his experience at one company location, "without any hint" that the same practices applied at the other locations); *Pegues*, 2013 WL 1896994, at *4 (declining to certify nationwide class where the plaintiff failed to offer any firsthand knowledge of practices at locations other than the location where the plaintiff worked).

For these reasons, the Motion for Conditional Certification is **GRANTED in part**.  The Court will permit conditional certification, but only with respect to nurses and technicians who worked at DaVita during the relevant time period in these nine states: Arkansas; Florida; Georgia; Louisiana; Oklahoma; New York; Tennessee; Texas; and Virginia.  *See Avendano v. Averus, Inc.*, No. 14-cv-01614-CMA-MJW, 2015 WL 1529354, at *6 (D. Colo. Mar. 31, 2015) (narrowing the

plaintiff's proposed collective where the plaintiff's allegations and evidence did not support a city-wide company collective).

## II.    Notice

Unlike Rule 23 class actions, collective actions under the FLSA bind only those plaintiffs who opt in. *Norwood*, 2016 WL 7666525, at *1. To inform all potential opt-in plaintiffs of the action, a court may authorize a plaintiff to send out notices and opt-in consent forms to putative collective action members. *Hoffmann-La Roche*, 493 U.S. at 169–70. "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action, so that potential plaintiffs can make informed decisions about whether to participate." *MacDonald*, 2019 WL 1755282, at *6 (quotation and alteration marks omitted). "Under the FLSA, the Court has the power and duty to ensure that the notice is fair and accurate, but it should not alter [the] plaintiff's proposed notice unless such alteration is necessary." *Creten-Miller v. Westlake Hardware, Inc*., No. 08-2351-KHV, 2009 WL 2058734, at *2 (D. Kan. July 15, 2009).

Plaintiff requests that the Court approve his proposed notice, which is attached to his Motion as Exhibit N, *see* [Doc. 73-14], and his proposed method of notice. [Doc. 73 at 1]. Plaintiff seeks a 90-day notice period for Proposed Collective members to decide whether to join the lawsuit, and also requests authorization for Plaintiff's counsel to issue notice to the potential opt-in plaintiffs by mail, email, and text message "at the beginning of the notice period, with a reminder [45] days thereafter." [*Id.*]. Plaintiff "also requests leave to notify the [potential opt-in plaintiffs] via social media and posting at Defendant's break rooms." [*Id.* at 20].

DaVita objects to certain components of Plaintiff's proposed notice. *See* [Doc. 78 at 19]. In its view, the Court should not permit notice by non-mail methods and should limit the notice

period to 60 days. [*Id.* at 19–20]. And finally, it argues that if the Court grants conditional certification, the Court "should permit the Parties two weeks from the date of the Order to confer about the substance of the Notice, in order to correct internal inconsistencies about the claims and time limits in [Mr.] Bowling's proposed Notice." [*Id.* at 20]. The Court addresses the Parties' requests below, turning first to the substance of Plaintiff's proposed notice and then to the procedural aspects of providing notice to the Proposed Collective.

*Substantive Elements*. "Notice to FLSA collective action members must 'contain accurate information concerning the collective action so that potential plaintiffs can make informed decisions as to their participation.'" *Levine*, 2020 WL 6546734, at *4 (quoting *Armijo v. Star Farms, Inc.*, No. 14-cv-01785-MSK-MJW, 2015 WL 13310426, at *2 (D. Colo. Dec. 14, 2015)). An FLSA notice should describe the nature of the FLSA collective action and offer the recipient the opportunity to "opt-in" to the action by filing a consent form. *See Pena*, 2019 WL 5577947, at *2. "It should also advise recipients of their right to be represented by counsel for the original plaintiff, to obtain independent representation, or to participate *pro se*," as well as explain "certain rights of an 'opt-in' plaintiff, including the right not to be bound by a settlement that the original plaintiff advocates." *Id.* (citing *Ortez v. United Parcel Serv., Inc.*, No. 17-cv-01202-CMA-SKC, 2018 WL 4328170, at *3 (D. Colo. Sept. 11, 2018)).

The Court finds that Plaintiff's proposed notice requires modifications before the Court may approve it. First, the proposed notice contemplates a nationwide class and does not consistently set forth the applicable notice period. *Compare* [Doc. 73-14 at 2 (providing a 90-day notice period) *with id.* at 3 (providing a 60-day notice period)]. The proposed notice must be modified to account for this Court's narrowing of the Proposed Collective to the nine states in

which the Opt-In Plaintiffs worked and must also accurately and consistently inform putative opt-in plaintiffs of the timeframe in which they may join this lawsuit.

Additionally, while Plaintiff's proposed notice describes the nature of the FLSA collective action, the Court finds that the notice is, in part, substantively inaccurate, contemplating claims that are not pending in this action. *See* [*id.* at 2 (stating that this lawsuit involves allegations of unpaid rest breaks)]. The proposed notice also improperly informs potential opt-in plaintiffs that if they opt in, they will be represented by Plaintiff's attorneys; instead, the notice must inform Proposed Collective members that they may join the action and still obtain independent representation or proceed *pro se*. *Pena*, 2019 WL 5577947, at *2; *Martinez v. Chenault Consulting, Inc.*, No. 1:20-cv-00954-KWR-GJF, 2021 WL 4810655, at *3 (D.N.M. Oct. 15, 2021) (directing the plaintiff to amend proposed notice to inform recipients that they can secure their own counsel or proceed *pro se*). Finally, the proposed notice also fails to inform putative plaintiffs of their right to not be bound by any potential settlement, even if they opt in. [Doc. 73-14]; *Pena*, 2019 WL 5577947, at *2. Due to these substantive deficiencies, the Court cannot approve the proposed notice as-is.

***Procedural Elements***. First, the Parties disagree as to the appropriate length of the notice period: 90 days, as requested by Plaintiff, or 60 days, as suggested by Defendant. Under the circumstances of this case, the Court does not find a 90-day opt-in period objectionable. While the courts in this district may favor a 60-day notice period, "90-day opt-in periods are not unusual." *Kibler v. Kroger Cos.*, No. 21-cv-00509-PAB-KMT, 2022 WL 268056, at *9 (D. Colo. Jan. 28, 2022); *see also Esparsen v. Ridley's Fam. Mkts., Inc.*, No. 18-cv-01556-RM-GPG, 2020 WL 9424291, at *4 (D. Colo. Feb. 21, 2020) (90-day notice periods "ha[ve] generally been permitted in the District of Colorado"), *report and recommendation adopted*, 2020 WL 9424246 (D. Colo.

Mar. 13, 2020).  The Court notes that the collective conditionally certified in this Order covers DaVita locations across nine different states; given the time and efforts required to notify a collective this large, the Court cannot conclude that 90 days is unreasonably long, particularly where Defendant has not explained how it will be prejudiced by a 90-day notice period.  *Cf. Darrow*, 2012 WL 638119, at *7 ("The Court agrees with Plaintiffs that ninety days is reasonable given the potential difficulties inherent in contacting delivery drivers across several states, many of whom may no longer be employed by Defendants.").  The Court will permit a 90-day notice period in this case.

The Court turns next to the appropriate method of notice.  Plaintiff seeks to notify putative opt-in plaintiffs using five different methods: mail, email, text message, social media, and postings in DaVita's break rooms.  [Doc. 73 at 1, 19–20].  Defendant objects to this proposal, arguing that Plaintiff "has not shown that the circumstances warrant . . . notice by text message, social media, or in break rooms."  [Doc. 78 at 19].  According to Defendant, these methods of notice are either unreliable or burdensome, as there is no indication that notice through the mail is unlikely to reach the potential opt-in plaintiffs.  [*Id.* at 20].  DaVita also asserts that posting notice in workplace break rooms "is highly unusual, and unnecessary here."  [*Id.*].  In his Reply, Plaintiff states only that his "proposed methods of notice, for which he provided ample support in his initial Motion, will allow for quick and efficient notice to the putative class so they have time to act if they wish to do so."  [Doc. 83 at 11].

In short, Mr. Bowling has not adequately explained why the use of five separate methods of notice is necessary in this case. *See generally* [Doc. 73 at 19–20].  The simple fact that each of these methods has, in other cases, been approved does not demonstrate that all five of these methods are required here.

First, the Court declines to grant Plaintiff's request that the Court order notice via postings in DaVita break rooms. "[T]he potential plaintiffs reached by such posting—current [employees]—are the same employees for whom Defendant[] most likely ha[s] current address information." *Darrow*, 2012 WL 638119, at \*7. Mr. Bowling has not explained how posting the notice at DaVita locations would work logistically with respect to consent forms, and he has not explained why any benefit from break room posting would outweigh the burden on DaVita of ensuring that notice is posted in each of its locations. *See generally* [Doc. 73; Doc. 83]. The Court finds that break room posting would be superfluous in this instance. *See MacDonald*, 2019 WL 1755282, at \*7 (declining to require that notice be posted at job sites because there was no evidence that the posting would reach a wider audience than mailing). Furthermore, Mr. Bowling offers no substantive argument in support of his request to provide notice via social media, nor does Mr. Bowling explain the parameters of such notice—i.e., whether Plaintiff requests that DaVita post the notice on its own social media pages, or whether Plaintiff intends to attempt to find Proposed Collective members' social media pages and deliver notice directly. *See* [Doc. 73 at 20]. The Court finds that any social media notice is unlikely to materially improve the chances of notice and will not permit notice via social media.

The remaining proposed methods of notice are mail, email, and text messages. Of these three methods, Defendant raises a substantive challenge only to notice by email. [Doc. 78 at 19–20]. Mail is the most common form of notice and appears appropriate in this case, but the Court is cognizant that current mailing addresses of all potential opt-in plaintiffs may be difficult to obtain. Courts have acknowledged that "notice by email and text is reasonable in today's mobile society" and that "these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved." *Calvillo v. Bull Rogers,*

*Inc.*, 267 F. Supp. 3d 1307, 1315 (D.N.M. 2017).  For this reason, "[c]ourts in this District . . . have authorized sending notice to putative class members by mail, email, and text message." *Kenney v. Helix TCS, Inc.*, No. 17-cv-01755-CMA-KMT, 2021 WL 1634506, at *5 (D. Colo. Apr. 27, 2021) (collecting cases); *see also Felps v. Mewbourne Oil Co., Inc.*, 460 F. Supp. 3d 1232, 1241 (D.N.M. 2020) (explaining that "courts within [the District of New Mexico] routinely approve notice by mail, email message, *and* text message").  While Defendant argues that email is not a necessary form of notice because "there is no evidence [that] notice recipients are so transient that mail is unlikely to reach them," [Doc. 78 at 20], it is plausible that many Proposed Collective members have likely moved since they last reported their address to DaVita.  "Email seems the least invasive approach to providing notice."  *James*, 522 F. Supp. 3d at 925.  Because utilizing multiple methods of notice "increase[s] the probability of apprising collective action members of their rights," *Lindsay v. Cutters Wireline Serv., Inc*., No. 17-cv-01445-PAB-KLM, 2018 WL 4075877, at *3 (D. Colo. Aug. 27, 2018), the Court will permit notice to be sent via first class mail, email, and text message.

Finally, Plaintiff asks the Court to permit a reminder notification 45 days after the first notification is sent.  [Doc. 73 at 1].  However, Plaintiff offers no substantive argument in support of this request, and his request does not contemplate whether a reminder notice would be sent only to those individuals who have yet to respond, or to the entire collective—i.e., to individuals who have already responded to the original notice.  Because Plaintiff does not explain why a reminder is necessary, and because the Court is already permitting notice through three separate channels, the Court declines to permit a reminder notice at this juncture.  *See Kibler*, 2022 WL 268056, at *8 (declining to permit a reminder notice where the plaintiff failed to explain why a reminder was necessary); *Foster v. Nova Hardbanding, LLC*, No. CV 15-1047 CG/LAM, 2016 WL 4492829, at

*7 (D.N.M. Apr. 20, 2016) (declining to permit a reminder notice where the collective-action members would be receiving notice via mail and email).  If Plaintiff seeks permission to send a reminder notice, it may raise a substantive argument in support of the reminder notice in the anticipated forthcoming motion discussed below, after meeting and conferring with Defendant.

Accordingly, insofar as the Motion seeks approval of Plaintiff's proposed notice, the Motion is **DENIED**.  It is **ORDERED** that the Parties shall meet and confer, no later than **July 20, 2023**, about amendments to Plaintiff's proposed notice in compliance with the guidance stated herein.  On or before that date, Plaintiff shall file a renewed motion seeking approval of the notice and consent form.  **The Parties shall use their best efforts to mutually agree on a proposed notice and consent form, consistent with the rulings herein, and the Parties are expressly advised that the Court will not entertain arguments already raised by the Parties and addressed by the Court in this Order.**  In the event that the Parties cannot arrive at a mutually acceptable draft, they shall submit a single proposed notice and/or consent form, indicating the language in the notice on which they agree and the language on which they cannot agree, as well as the content they each propose.  Only after the Court approves the amended notice will the Court permit counsel to send notice to Proposed Collective members.

## CONCLUSION

For these reasons, it is **ORDERED** that:

(1)     Plaintiff's Opposed Motion for FLSA Conditional Certification and Court-Authorized Notice [Doc. 73] is **GRANTED in part** and **DENIED in part**; and

(2)     On or before **July 20, 2023**, the Parties shall meet and confer and file a Motion to Approve Notice and Consent to Join Form or other documents, as contemplated above.

DATED:  July 6, 2023                      BY THE COURT:

_____
Nina Y. Wang
United States District Judge